UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| KENDALL ANTHONY KILLMAN,<br><br>Plaintiff,<br><br>v.<br><br>LELAND DUDEK,<br>Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:24-cv-01337-EJY<br><br>**ORDER** |

Pending before the Court is Plaintiff Kendall Killman's Complaint for Review of Final Decision of the Commissioner of Social Security and his Brief in support thereof. ECF Nos. 6, 16. The Court reviewed Plaintiff's Brief, the Commissioner's Brief in response (ECF No. 18), and Plaintiff's Reply (ECF No. 19). The Court finds as follows.

**I.    Background**

Plaintiff filed an application for a survivor claim of Child Disability Benefits ("CDB") on November 1, 2019, alleging a disability onset date of January 1, 2015. Administrative Record ("AR") 250-53. Plaintiff claimed his disability was the result of the following impairments: Ehlers-Danlos Syndrome ("EDS"), scoliosis, fibromyalgia, an occult tethered cord, anxiety, mast cell activation syndrome , depression, postural orthostatic tachycardia syndrome , syringomyelia, and irritable bowel syndrome . AR 278. This claim was denied on April 17, 2020, with the state agency determining that although they found Plaintiff's condition was severe, "it [was] expected to improve and … [was] not expected to remain severe enough for 12 months in a row to keep [Plaintiff] from working." AR 112. This finding was based in part on the fact that Plaintiff had recently undergone surgery for his tethered cord and reported significant improvement. AR 103. Plaintiff filed a request for reconsideration alleging his condition had not improved and claiming a new disability onset date of May 31, 2020. AR 114. Plaintiff's claim was denied again upon reconsideration on April 22, 2022. AR 135-38.

Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ") on June 2, 2022. AR 139. At this hearing, which took place on April 28, 2023, Plaintiff alleged he experienced constant pain and fatigue while sitting or standing, requiring him to lie down between ten to twenty times each day and use a wheelchair outside the home. AR 71-76. Plaintiff noted that the surgery for his tethered cord and stem cell injections in his knees had resulted in significant improvements, but that he still experienced severe leg weakness. AR 70, 74. Regarding his mental health symptoms, Plaintiff stated that he frequently experiences suicidal thoughts, but indicated he was unwilling to try new medication for anxiety or depression after previously trying Desipramine. AR 78, 82. The ALJ issued a decision of non-disabled on September 11, 2023. AR 22-45. Plaintiff submitted a request for review by the Appeals Council, who denied the request on May 22, 2024, rendering the ALJ's decision the final decision of the Commissioner. AR 1-4. Plaintiff timely filed the instant action seeking judicial review of the Commissioner's decision on July 19, 2024.

## II.     Standard of Review

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). Finally, the court may not reverse an ALJ's decision on account of an error that is harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful

normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

To establish whether a claimant is disabled under the Act, there must be substantial evidence that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps are:

> Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).

> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).
>
> Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *See id*.

*Id*. at 1098–99 (internal alterations omitted).

### III. The ALJ's Decision

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 31, 2020. AR 24. At step two, the ALJ found Plaintiff suffered from the following severe impairments: EDS, degenerative disc disease of the thoracic, cervical, and lumbar spine, bilateral osteonecrosis of the femur and tibia, autism, depression, and anxiety. AR 25. However, the ALJ found all of Plaintiff's other claimed impairments were either non-severe or insufficiently represented in the record since June of 2020. *Id.* At step three, the ALJ found that neither Plaintiff's physical nor mental impairments met or medically equaled the severity of any listed impairments in 20 C.F.R., Part 404, subpt. P, App. 1 (the "Listings"). AR 25-30.

In preparation for step four, the ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> [P]erform light work as defined in 20 CFR 404.1567(b) except the claimant can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk for 4 hours in an 8-hour workday. The claimant can occasionally operate foot controls with the bilateral feet, and frequently operate hand controls with the bilateral hands. The claimant can occasionally reach overhead, and frequently reach in all other directions, with the bilaterally upper extremities. The claimant can frequently handle, finger, and feel with the bilateral hands. The claimant can occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds. The claimant can occasionally stoop, kneel, crouch, or crawl. The claimant can never work at unprotected heights. The claimant can occasionally work around moving mechanical parts, and can occasionally operate

a motor vehicle. The claimant can occasionally tolerate work in extreme cold, extreme heat, and around vibration. The claimant can understand, remember, and carry out detailed but not complex tasks. The claimant can frequently interact with supervisors, but only occasionally interact with the public and co-workers.

AR 30.

In arriving at this RFC determination, the ALJ considered Plaintiff's subjective symptom testimony, including testimony regarding his chronic pain, limited mobility, and suicidal thoughts, and found that Plaintiff's medically determinable impairments could reasonably cause these alleged symptoms. AR 30-37. However, the ALJ determined the alleged intensity, persistence, and limiting effects of the symptoms were not consistent with the medical evidence. *Id.* In particular, the ALJ noted that Plaintiff's pain responded well to medical marijuana, and he was receiving no other treatment for pain. AR 32. The ALJ also noted that the record indicated multiple occasions in which different medical providers had recommended physical therapy, but Plaintiff had never followed through with those recommendations. AR 33-34. The ALJ found the record did not support Plaintiff's testimony that he required a wheelchair as no assistive device for ambulation was ever prescribed. AR 34. Regarding Plaintiff's mental health symptoms, the ALJ noted the record indicated only a single medication being briefly prescribed for depression, with Plaintiff being resistant to attempting other medications and instead reporting positive results with psychotherapy. AR 34-35.

The ALJ also considered the medical opinions of: (1) state agency consultants Hala Abdel Aziz, Susan Ribeiro, Mark Short, and Ana Olivares; (2) Plaintiff's treating psychologist and pediatrician Michelle Gravley and Wesley Robertson, respectively; (3) Judith Friedman and Stephanie Punt, psychologists at UCLA; and (4) Jill Silverman, a rheumatologist with New York Physicians. AR 37-41. The ALJ found the opinions of the state consultants to be partially to mostly persuasive, save for that of Dr. Ribeiro, noting that Plaintiff's positive response to treatment coupled with his refusal to attempt physical therapy suggested he was less limited than the reports suggested. AR 38-40. The ALJ also found Drs. Friedman and Punt's report to be partially persuasive, noting that it did not include a function-by-function analysis or describe Plaintiff's limitations in vocationally relevant terms. AR 40. The ALJ found the extreme limitations described in Dr.

Robertson's opinion to be unpersuasive because they were inconsistent with the relatively unremarkable findings of examinations and Plaintiff's reported improvement with treatment. AR 41. The ALJ found Dr. Gravley's written statements unpersuasive because they were not written in functional terms and pertained to Plaintiff's chronic pain, something for which as a psychologist Dr. Gravley did not treat him. AR 37. Finally, the ALJ found Dr. Silverman's opinion to be unpersuasive because it conflicted with the overall record and Plaintiff's self-reported improvement with treatment and ability to focus on hobbies for extended periods. AR 41.

The ALJ also considered a letter submitted by Plaintiff's mother, Trudy Para-Killman. The ALJ noted that although Ms. Para-Killman made extreme statements of limitation, she lacked medical training and the record suggested she may not be consistently observing Plaintiff because of her non-profit work. AR 42. The ALJ also noted the record indicated Ms. Para-Killman had repeatedly urged Plaintiff to engage in treatment such as physical therapy, but Plaintiff declined to do so. *Id.*

Step four required no findings because Plaintiff has no past relevant work. *Id.* At step five, the ALJ concluded that based on Plaintiff's age, education, work experience, and RFC, there were jobs that Plaintiff could have performed that existed in significant numbers in the national economy. AR 43. The Vocational Expert testified that if Plaintiff were limited to slightly below the light work level, he could perform the following representative occupations: Small Products Assembler (DOT# 706.684-022), Inspector (DOT# 559.687-074), and Garment Sorter (DOT# 222.687-014). AR 43. The Vocational Expert also testified that, even if Plaintiff were limited to the sedentary work level, he could still perform the following representative occupations: Table Worker (DOT# 739.687-182), Lens Inserter (DOT# 713.687-026), and Agricultural Sorter (DOT# 521.687-086). *Id.*

Based on the above, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 31, 2020, through the date of this decision." AR 44. Therefore, the ALJ denied Plaintiff's applications for CDB, finding Plaintiff was not disabled under section 223(d) of the Social Security Act through September 11, 2023. AR 45.

**IV.     Discussion**

Plaintiff's three-page opening brief is divided into three categories: Abuse of Discretion, Abuse of Power/Bias, and Error of Law. ECF No. 16 at 4-6. Under the Abuse of Discretion heading Plaintiff asserts the ALJ improperly discounted the medical opinions of Dr. Robertson, his pediatrician, Dr. Gravley, his psychologist since 2009, and Dr. Friedman, a psychologist with UCLA. *Id.* at 4. Under the Abuse of Power/Bias heading, Plaintiff asserts the ALJ assigned to his case only approves between 3-14% of disability claims, which Plaintiff argues "is indicative of a general bias towards those with disabilities." *Id.* Under the Error of Law heading, Plaintiff cites to several portions of the administrative record as well as several categories of listed impairments under Subpart P, Appendix 1. *Id.* at 6. Also under this heading, Plaintiff states that at a previous hearing the ALJ "ordered [Plaintiff and his mother] out of her courtroom until [he] hired a lawyer," which Plaintiff argues was unethical. *Id.* Separately, and most importantly to this review, Plaintiff avers there is additional evidence to support his claim; that is, Plaintiff represents he has been approved for "PCA hours"[1] for assistance with bathing, grooming, and housekeeping, though he includes no such evidence in the more than sixty pages of attachments to his brief. *Id.* at 5.

   A.     <u>Abuse of Discretion</u>.

Under the current regulations for claims filed after March 27, 2017, an ALJ does not "defer or give any specific evidentiary weight to any medical opinions." *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citing 20 C.F.R. § 416.920c(a). When assessing the persuasiveness of a medical opinion, the "most important factors" an ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). When determining the persuasiveness of a medical opinion based on these factors, an ALJ must still support his/her findings with substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). ("[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). Under the substantial evidence standard, an ALJ must "articulate ... how persuasive" it finds each medical opinion and "explain how [they] considered the

---

[1] Although Plaintiff provides no explanation for this term, the Court surmises from context that PCA likely refers to a personal care attendant or assistant.

7

supportability and consistency factors" in reaching this finding. *Id.* "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant ... objective medical evidence." *Id.* at 791-92 (internal quotations omitted). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (internal quotations omitted).

In the present case, Plaintiff challenges the ALJ's discounting the opinions of Wesley Robertson, M.D., Michelle Gravley, Psy.D, and Judith Leone Friedman, Ph.D. However, Plaintiff provides no legal arguments or citations to the record to support this challenge. ECF No. 16 at 4. Rather, Plaintiff generally refers to the education and experience of these medical providers without indicating how their opinions are supported by the record or which portions of the ALJ's assessment he believes were erroneous. Nonetheless, the Court liberally construes Plaintiff to be arguing the ALJ did not provide an explanation supported by substantial evidence for discounting the opinions of these three medical providers, and considers the ALJ's discussion of the opinions in sequence.

As the ALJ noted, Dr. Robertson indicated, among other limitations, in an RFC questionnaire that Plaintiff could perform less than the full range of sedentary work and was limited to sitting or standing for less than 2 and half hours per work day. AR 41. The ALJ noted that these severe limitations conflicted with the relatively unremarkable exam findings included in the record, as well as with Plaintiff's reporting of the effectiveness of medical marijuana in managing his pain. *Id.* The ALJ also found Dr. Robertson's report did not include any objective findings on examination to support his conclusions, that Dr. Robertson was not a specialist in EDS, and that portions of Dr. Robertson's report used relatively vague terms rather than vocationally relevant terms. *Id.*

The Court finds these last two observations to be in error. Nothing in the two-page questionnaire cited by the ALJ indicated that Dr. Robertson's opinion related to EDS or that Dr. Robertson was holding himself out opining on any particular medical diagnosis. AR 1695-96. Instead, Dr. Robertson, an M.D., appears to offer his general medical opinion regarding Plaintiff's limitations. Thus, the Court finds a lack of specialization in EDS is not relevant to whether Dr. Robertson's opinion is of any persuasive value. Further, although the ALJ describes Dr. Robertson's opinion as using vague terms, the Court finds this a particularly odd observation as the "opinion" in

8

question is a pre-prepared form in which Dr. Robertson merely checked boxes to indicate his conclusions regarding Plaintiff's functional capacity. *Id.*

Despite finding the ALJ erred in reaching these findings, the same facts also convince the Court that this error is harmless. An ALJ's error is harmless where "it is inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (internal quotation omitted); *see also Marsh v. Colvin*, 792 F.3d 1170 (9th Cir. 2015) (applying harmless error standard when an ALJ ignored the medical opinion of a treating source). Because Dr. Robertson's opinion consists of a two-page form with no objective findings on examination to support the conclusions indicated within, the fact that these conclusions conflicted with the other medical evidence of record, such as normal movement of all four extremities with full strength and improvement with conservative treatment (AR 1267, 1884) provided clear and convincing reasons for discounting Dr. Robertson's opinion. The Court is satisfied that the ALJ's errors with regards to Dr. Robertson's qualifications and supposed use of vague terms did not affect the ultimate outcome.

The ALJ's consideration of Dr. Gravley's opinions is limited to two sentences. Specifically, the ALJ says Gravley's written statements are not persuasive because they are not written in functional terms and address Plaintiff's physical pain—an area outside the expertise of a Psy.D. and for which she did not treat him. AR 37. While the fact that the ALJ spent so little time considering the opinion of a medical provider who has treated Plaintiff for several years is concerning, the Court again finds this harmless error. A review of the written statements in question reveals they are narrative reports of Plaintiff's struggles as relayed to Dr Gravley in therapy sessions, rather than opinions on Plaintiff's functional limitations. *See generally*, AR 16-18, 1206-07, 1260-61, 1309-12. While the statements indicate Plaintiff discussed his struggles with EDS and chronic pain during therapy, as well as his past negative experiences seeking treatment, the ALJ correctly notes that Dr. Gravley, as Plaintiff's therapist, did not treat his EDS or chronic pain. Further, while Dr. Gravley mentions Plaintiff's diagnoses of General Anxiety Disorder and Major Depressive Disorder, conditions for which she was actually treating him, she does so in the context of describing his past struggles with the conditions and provides no opinion on how these conditions would limit Plaintiff's ability to function or obtain gainful employment.

Although the Court agrees the ALJ could have better explained why Dr. Gravley's written statements were not useful for the purpose of determining Plaintiff's RFC, the Court finds the reasons provided by the ALJ are sound. Although Dr. Gravley appears to have treated Plaintiff for a number of years, as a psychologist, she lacks the expertise to opine on Plaintiff's physical functional limitations. *See Bollinger v. Barnhart*, 178 Fed.Appx. 745, 746 n. 1 (9th Cir. 2006) (A treating psychologist's "opinion regarding [claimant]'s physical limitations was beyond her professional expertise as a Ph. D. psychologist"). Therefore, the ALJ was justified in finding Dr. Gravley's observations regarding Plaintiff's chronic pain and EDS unpersuasive, when compared to Dr. Aziz's opinion placing Plaintiff's RFC at slightly below a light work level, which the ALJ found to be mostly persuasive. AR 37-38 (citing AR 114-127).

Further, Dr. Gravley's observations regarding Plaintiff's mental impairments, the conditions for which she has been treating him, do not appear to be medical opinions the ALJ was required to consider under 20 C.F.R. § 404.1520c. The regulations define "medical opinion" to mean "a statement from a medical source about what [a claimant] can still do despite [their] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" in an enumerated list of functional areas. 20 C.F.R § 404.1513(a)(2). Dr. Gravley's statements, which are largely duplicative, provide a general outline of Plaintiff's history of mental health symptoms and the underlying life stressors she believed were exacerbating them. *See, e.g.*, AR 1206-07, 1311-12. Not found in any of these statements is any opinion as to how Plaintiff's mental health symptoms would limit his functioning in a work setting.[2] Thus, the Court finds Dr. Gravley's statements not to be medical opinions under the regulations, and the ALJ was not required to assess their persuasiveness.

---

[2] A possible exception to this is Dr. Gravley's statement that Plaintiff "finds it difficult to connect with others" and primarily interacts with others online. AR 15. This could be reasonably construed as a limitation on Plaintiff's ability to interact with supervisors, coworkers, or the public in a work setting. *See* 20 C.F.R § 404.1513(a)(2)(ii) (listing "responding appropriately to supervision, co-workers, or work pressures in a work setting" as a relevant ability in a medical opinion). However, to the extent the ALJ erred by not considering Dr. Gravley's statements, the Court finds such error to be harmless as the ALJ's RFC determination already limits Plaintiff to occasional interactions with coworkers and the public, which the ALJ justifies with ample citation to his therapy notes and reported hobbies. AR 35-36. The Court finds it unlikely that further consideration of Dr. Gravley's comment regarding connecting with others would have changed the ultimate disability determination.

Finally, the ALJ found Dr. Friedman's neuropsychological assessment to be partially persuasive, noting that Dr. Friedman's diagnoses of dysthymia, generalized anxiety disorder, and major depressive disorder were consistent with the overall record. AR 40. The ALJ also noted that Dr. Friedman's findings on exams supported some level of functional restrictions, but did not include a function by function analysis of Plaintiff's impairments in vocationally relevant terms. *Id.* The Court finds this was a valid basis for finding Dr. Friedman's report only partially persuasive as descriptions that do not specify functional limits are not useful in determining a claimant's RFC. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("The ALJ found that the doctor's descriptions of Ford's ability to perform in the workplace as 'limited' or 'fair' were not useful because they failed to specify Ford's functional limits. Therefore, the ALJ could reasonably conclude these characterizations were inadequate for determining RFC.") (cleaned up).

Based on the foregoing, the Court finds the ALJ's evaluation of the medical opinions of these providers is supported by substantial evidence. To the extent the ALJ erred in failing to consider specific portions of any of the above opinions, such error is harmless.

B.  Abuse of Power/Bias.

Plaintiff references, and attaches to his Reply, an online article purporting to show the rate of approving disability claims of several ALJs stationed in Orland Park, Illinois. ECF No. 19 at 2, 5-12. Plaintiff argues that these figures, which indicate the ALJ in this case has approved only 5% of applications before her as of November 2024, establish bias and are grounds for reversal. *Id.* at 2. However, statistics of unrelated rulings by themselves do not suffice to establish bias. *See Cope v. Colvin*, Case No. 2:15-cv-01744-JRC, 2016 WL 6439940, at *9 (W.D. Wa. Nov. 1, 2016) ("ALJ bias cannot be proven by statistical analysis, but rather any ALJ's alleged bias must be judged on a case by case basis."). Rather, Plaintiff must establish a "conflict of interest or some other specific reason" to rebut the presumption that an ALJ is unbiased. *Rollins v. Massanari*, 261 F.3d 853, 857-58 (9th Cir. 2001).

The only evidence of bias specific to this case that Plaintiff offers is the transcript of the November 22, 2022 hearing,[3] which Plaintiff characterizes as showing the ALJ "kicking them out of the hearing." ECF No. 16 at 6. However, after reviewing the hearing transcript it is apparent that the ALJ was acting in Plaintiff's interest. Statements by Plaintiff and his mother indicated they had a misapprehension regarding the cost of obtaining representation for the hearing, and the ALJ chose to postpone the hearing to ensure Plaintiff was fully aware of the availability of free representation before choosing to proceed *pro se*. ECF No. 17. This was well within the ALJ's discretion and, in any event, does not establish bias. *See* HALLEX, I-2-3-10(D), 1994 WL 1552640, at *3 (Nov. 25, 2024) ("An ALJ may postpone a hearing before the time set for the hearing, or an ALJ may adjourn a hearing that is in progress and continue it later."). Certainly, the opportunity to obtain free representation at the continued hearing did not prejudice Plaintiff's application for benefits. The Court finds Plaintiff fails to establish bias.

        C.     <u>Error of Law</u>.

Plaintiff cites to several of the listed impairments in the portion of his brief titled "Error of Law," but provides no argument demonstrating how the ALJ's consideration of these listings were in error.[4] ECF No. 16 at 6. For example, Plaintiff cites to Listings 1.00, 11.00, 12.00, and 14.00, but Plaintiff does not indicate how the ALJ erred when applying these criteria to the facts of his case. *Id.* Indeed, the ALJ discussed these Listings at length in part three of her analysis, AR 26-30, and Plaintiff at no point specifies which portion of this analysis contains legal error. Similarly, Plaintiff references the "2,400+ pages of documentation" in the Administrative Record, but does not direct the Court to any part of the record that the ALJ either mischaracterized or failed to consider. ECF No. 19 at 2. While the Court recognizes that Plaintiff is proceeding without counsel, the Court will

---

[3] Plaintiff also attaches a statement from his mother, though it is not clear whether Plaintiff offers this as evidence of bias or some other purpose. ECF No. 16 at 74. In this statement, Plaintiff's mother challenges the ALJ's statement that "Ms. Para-Killman is … busy herself running a non-profit," and therefore "is not consistently observing [Plaintiff]." AR 42. While the Court agrees this comment was unnecessary, it does not establish bias. The ALJ provided sufficient justification for discounting Ms. Para-Killman's lay opinion by citing to Plaintiff's reported daily activities and portions of the record indicating Plaintiff's refusal to engage in treatment admittedly encouraged by his mother. *Id.*

[4] Attached to Plaintiff's opening brief is a document prepared by Robert Flemming, who represented Plaintiff before the ALJ, though it is unclear whether Plaintiff intends this to support his argument that the ALJ committed an error of law. ECF No. 16 at 39-71. The document, which is thirty-three pages long, appears to quote from various portions of the medical record in no apparent order while providing no legal argument. *Id.* Because Plaintiff provides no guidance as to how this document establishes legal error on behalf of the ALJ, the Court does not consider it.

not undertake a fishing expedition of the voluminous record in this case in an attempt to locate evidence to support Plaintiff's argument. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our circuit has repeatedly admonished that we cannot manufacture arguments for an appellant …. Rather, we review only issues which are argued specifically and distinctly in a party's opening brief.") (internal quotations omitted). That is the obligation of the party seeking judicial review, and this burden applies equally to pro se plaintiffs.

D.   Additional Evidence.

In his opening brief, Plaintiff represents that since the ALJ issued her decision, he has been awarded 15.5 "PCA hours" by the state of Nevada to assist him with bathing and personal grooming. ECF No. 16 at 5. Plaintiff presents this assertion as "additional evidence to support [his] inability to perform gainful employment." *Id.* Under sentence 6 of 42 U.S.C. § 405(g) the Court has the authority to order additional evidence be considered by the Commissioner, but only "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Evidence is "material" if it bears "directly and substantially on the matter in dispute." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). Further, the plaintiff must "demonstrate that there is a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing." *Id.*

Here, Plaintiff's opening brief mentions the award of "PCA hours" but provides no actual evidence of such. However, attached to Plaintiff's Reply is a three-page print out of an unspecified web page that appears to document approval by Medicaid of a "Screening To Determine The Appropriateness" of personal care services on January 24, 2025, followed by approval for 1,612 units of personal care for bathing/dressing/grooming, toileting, transferring, mobility/ambulation, housekeeping, laundry, essential shopping, and meal prep. ECF No. 19 at 20-22.

Though this screening and subsequent award of personal care hours occurred more than one year after the ALJ's September 11, 2023 decision, this does not necessarily preclude evidence of such from being material. Many courts have found evidence dated after the final decision of the Commissioner to nonetheless relate to the period before that decision. *See Baker v. Colvin*, Case No. 16-cv-00771-EMC, 2016 WL 5869944, at *4 (N.D. Cal. Oct. 7, 2016) (collecting cases). In

*Baker*, for example, the Northern District of California found that treatment records post-dating the decision of an ALJ were material because they detailed continuing treatment of the same impairment (PTSD) which was the basis of the claimant's application and "support[ed] the opinions of examining [d]octors … to which the ALJ gave little weight." *Id*. at 3.

Here, evidence that Plaintiff's physical impairments are such that he may now require assistance with basic tasks such as bathing and grooming lends support to Dr. Robertson's opinion that Plaintiff was limited to carrying less than one pound and was unable to bend or kneel, which the ALJ discounted. AR 41. Similarly, because a finding of disability requires a finding that a claimant is unable to work as a result of a medically determinable impairment "which has lasted or can be expected to last for a continuous period of not less than twelve months," 42 U.S.C. § 1382c(a)(3)(A), there is a reasonable likelihood the ALJ's decision would have been different had she been presented evidence that, more than twelve months after her decision, Plaintiff would require assistance to perform basic self-care. Indeed, not only did Plaintiff indicate during his hearing that "medical professionals … say [he] should be getting assistance showering," AR 79-80, but the record indicates Plaintiff needed help with bathing, toileting, and dressing as far back as 2014. AR 854. Although the alleged onset of Plaintiff's disability was not until 2020, evidence that Plaintiff required such assistance at various periods both before and after the ALJ's decision is material to whether Plaintiff's limitations could have been expected to last for at least twelve months as of the time of the ALJ's decision.

Further, although the Commissioner argues Plaintiff "failed to show good cause for the failure to incorporate this evidence earlier in a prior proceeding," ECF No. 18 at 9, courts have repeatedly found the fact that medical records did not exist at the time of an ALJ's decision to establish good cause for their late submission. *See, e.g., Burton v. Heckler*, 724 F.2d 1415, 1418 (9th Cir. 1984) ("We hold that the fact that the evidence did not exist at the time of the ALJ's decision establishes good cause for [claimant]'s failure to introduce it before the ALJ.").

Based on the new evidence provided, the Court finds Plaintiff's case is properly remanded for purposes of requiring the ALJ to consider this evidence together with other related material evidence Plaintiff may wish to present.

**V.      Order**

IT IS HEREBY ORDERED that Plaintiff's Complaint seeking reversal of the ALJ's decision (ECF No. 6) is GRANTED and the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of Court shall close this case and enter judgment accordingly.

Dated this 18th day of July, 2025.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE